UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

BENITO ILDEFONSO,

    Petitioner,

v.                                        Case No. 5:19-cv-269-Oc-02PRL

WARDEN, FCC COLEMAN-USP II,

    Respondent.
_____/

## ORDER DENYING WRIT

Petitioner, proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. 1). Petitioner claims the Bureau of Prisons ("BOP") violated his due process rights when it imposed disciplinary sanctions upon him. *Id.* The Respondent filed a Response to the Petition, arguing that Petitioner was provided with all required due process throughout his disciplinary proceedings. (Doc. 11). Petitioner filed a Reply. (Doc. 12). The Petition is ripe for review.[1]

## Background and Procedural History

Petitioner is a federal inmate and is currently confined at the Federal Correctional Complex Coleman USP II. Petitioner is serving an aggregated 150-month term imposed by the United States District Court for the Eastern District of New York. *See* Case No. 1:10-cr-820-NGG-3 (E.D.N.Y.). Petitioner is challenging a

---

[1] Petitioner also filed an "Omnibus Motion" that included printout titled "Inmate Disciple Update Charges." (Doc. 16). The Court has reviewed this motion and has considered it when making this ruling.

disciplinary action taken against him at FCC Coleman USP-II, which resulted in the loss of good conduct time ("GCT") toward his sentence. He raises due process claims, alleges his hearing was late and he was framed in retaliation. (Doc. 1). Respondent requests the dismissal of the Petition because Petitioner was afforded all requisite due process throughout the disciplinary action against him and the evidence against him was sufficient to support the sanctions imposed. (Doc. 11).

Incident Report #3108990

During a cell search of Petitioner's cell on April 4, 2018, staff discovered a homemade smoking pipe inside Petitioner's secured locker. (Doc. 11-1 at 8). The pipe was made from a playing card rolled tight and a metal eraser end cut into one end. *Id*. Petitioner approached the staff member after the search and made the comment, "you can't write me up for that k2 pipe." *Id*. The staff member then asked Petitioner, "so that's what you smoke with this (k2)" and he replied, "yes I do." *Id*. The Incident Report was written for a violation of BOP Disciplinary Code 113, Drug Paraphernalia. The incident report noted that it was a rewrite. *Id*.

Petitioner was provided with a copy of the incident report on April 19, 2018 by Lt. C. Aviles. *Id*. Lt. Aviles was assigned to investigate the charge and interview Petitioner during the investigation. *Id*. at 9. Lt. Aviles advised Petitioner of his rights and Petitioner was given the opportunity to make a statement. Petitioner indicated that he understood his rights, understood the charges, and made the following statement: "No comment." *Id*. Lt. Aviles concluded that Petitioner was "appropriately

charged based on the facts contained within section 11 of this incident report…" and noted that the incident report was served late due to a rewrite. *Id*.

The matter was forwarded to the Unit Discipline Committee ("UDC") and was heard by the UDC on May 3, 2018. *Id*. at 8-9. At the UDC hearing, Petitioner stated he was never given a copy of the original incident report just the rewritten one. *Id*. at 8. Petitioner also denied giving "that statement toward [sic] officer Speerly" and denied having a lock for his locker. *Id*. The UDC determined the matter needed to be referred to the Discipline Hearing Officer ("DHO") for proper sanctions. *Id*. Following the UDC hearing, Petitioner was given notice of the hearing before the DHO. *Id*. at 12. He was advised of his rights during the disciplinary process, requested Lt. Mendez as a staff representative, and listed one witness. *Id*. at 12, 14.

The DHO hearing was held on May 17, 2018. *Id*. at 16. At the hearing, Petitioner stated that he understood his rights and was ready to proceed. *Id*. at 18. Petitioner's staff representative and witness appeared at the hearing. *Id*. at 16-18. Petitioner initially requested Lieutenant J. Mendez as a staff representative; however, he was determined to be a witness to the discipline process; therefore, he could not serve as Petitioner's staff representative. *Id*. at 16. As a result, Petitioner selected counselor R. Rodriguez, who was present the hearing and stated, "I advised inmate Ildefonso that his concerns need to be addressed during the appeals process, as his counselor I never had problems or issues with inmate Ildefonso." *Id*.

Petitioner denied the charge before the DHO and provided a written statement. *Id*. at 16-17. In his statement Petitioner took issue with the rewrite of the incident report and timing of delivery. *Id*. at 17. Petitioner also denied possession of the drug paraphernalia pipe and denied that his locker was secure. Petitioner stated that it is impossible for his locker to be secure because he doesn't own a lock. He also raises an issue with the delay of the UDC hearing. *Id*. Petitioner's witness appeared during the hearing and stated "Speerly likes to bother people. He likes to push people's buttons. This man doesn't own a lock. He's in the drug program trying to better himself. He never said those statements to Speerly." *Id*. at 18.

The DHO noted the original incident report was written on April 4, 2018; however, a rewrite of the incident report was requested due to the incident being reported on an outdated incident report form. *Id*. The second rewrite was because the officer forgot to change the date and time in section 13. *Id*. The report was finalized on April 18, 2018, and Petitioner was given his copy the next day. *Id*. The DHO noted this was explained to Petitioner during the hearing and did not affect his ability to present a defense. *Id*. The DHO stated the UDC was conducted late due to the report being referred back to the lieutenant's office for more information. *Id*. Once the report was returned back to the UDC it was past five working days. *Id*. The DHO noted this was explained at the DHO hearing and also at the UDC hearing. *Id*. The DHO explained the Warden's memo approving the delay is included with the DHO packet and did not affect his ability to present a defense. *Id*.

The DHO considered Petitioner's written statement and denial; however, gave greater weight to the staff member's account of the incident, investigation and the supporting photographic evidence. *Id*. at 17-20 The DHO found the reporting officer was clear in his report that he discovered a homemade pipe inside a secured locker that was identified as belonging to Petitioner. *Id*. at 19. The photograph of the pipe supports the officer's written statement and depicts a homemade smoking device constructed out of a playing card rolled tight and a piece of metal from a pencil eraser cut into one end. *Id*. at 20. The DHO noted Petitioner denied the charge and stated he never had a homemade pipe and never owed a lock. *Id*. Petitioner stated he had commissary receipts that would prove he never owned a lock. However, the DHO reasoned that commissary receipts would only prove he didn't buy a lock from commissary; it wouldn't prove he didn't buy a lock from another inmate. *Id*.

The DHO reviewed Petitioner's witness statement and noted that although he reinforced Petitioner's story, the DHO did not find his statement credible "as inmates in the past have gotten together to assist each other in in providing deliberate falsehoods to the DHO in hopes to dispute the written report." *Id*. Additionally, although Petitioner made an allegation the staff member planted the pipe in his locker, he failed to provide any evidence to support his theory. *Id*. The DHO considered the staff member's eyewitness account of the incident, photograph and written report, and found that Petitioner committed the prohibited act of Possession of drug paraphernalia, Code 113. *Id.* The DHO sanctioned Petitioner with, *inter alia*, disallowance of 41 days of good conduct time. *Id*. The DHO noted the sanctions were

appropriate as possession of drug paraphernalia in a correctional setting is a very serious violation in that these acts have historically been a factor in producing inmate behavior which often leads to disruptive and violent behavior. *Id*. The DHO report was completed on May 21, 2018, and a copy of the report was delivered to Petitioner on May 23, 2018. *Id*. at 21.

## Discussion

Habeas is the "exclusive remedy" for prisoners seeking "immediate or speedier release from confinement."[2] But "[w]here the prisoner's claim would not 'necessarily spell speedier release,' … suit may be brought under [42 U.S.C.] § 1983."[3] "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody."[4] The only relief that can be gained in a habeas action is an immediate or speedier release from custody.[5]

Prison disciplinary proceedings are not part of a criminal prosecution, and, therefore, the full panoply of rights that are due to a defendant in a criminal proceeding do not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). However,

---

[2] *Skinner v. Switzer*, 562 U.S. 521 (2011); *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005).

[3] *Skinner*, 562 U.S. 521 (quoting *Dotson*, 544 U.S. at 82).

[4] *Preiser v. Rodriquez*, 411 U.S. 475, 484 (1973).

[5] *See Rose v. Mitchell*, 443 U.S. 545, 586 (1979) (Powell, J., concurring with the judgment and noting that "the very purpose of the Great Writ is to provide some means by which the legality of an individual's incarceration may be tested."); *see also Cook v. Hanberry*, 592 F.2d 248, 249 (5th Cir. 1979) (noting that the "sole function of habeas corpus is to provide relief from unlawful imprisonment or custody, and it cannot be used for any other purpose.")

inmates are entitled to some due process protections. *Id*. Those protections include: (1) written notice of the charges at least 24 hours before a hearing to enable the inmate to prepare a defense; (2) an opportunity to call witnesses and present documentary evidence if doing so is not an undue hazard to institutional safety; and (3) a written explanation of the evidence relied on and reasons for disciplinary actions. *Id*. On the other hand, an inmate does not have the right to confrontation, or a right to counsel. *Id*. at 567, 570. Further, disciplinary decisions comport with the requirements of procedural due process when there is "some evidence" to support the disciplinary decision by the fact finder. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Here, Petitioner was given written notice of the charge and the hearings, was given timely opportunity to call witnesses and present evidence and was provided with written findings of fact explaining the DHO's determinations. Based on the foregoing, the Court finds that Petitioner was given fair hearings and received the appropriate procedural protections. In addition to the fact that Petitioner received due process as required pursuant to *Wolff*, the DHO reports clearly show that there was sufficient evidence to support the decision. Due process only requires that the determination of the DHO be supported by some evidence in the record. Ascertaining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of credibility of witnesses, or weighing the evidence. *Hill*, 472 U.S. at 455-56. "Instead, the relevant question is whether there is any

evidence in the record that could support the conclusion reached by the disciplinary board." *Id*.

The DHO based its decision on the staff's eyewitness account of the incident, photograph, and the written report. (Doc. 11-1 at 20). As such, the Court finds that there is "some evidence" to support the DHO's conclusion.

The BOP regulations do provide additional protection by requiring that the DHO base its decision on the "greater weight of the evidence" when there is conflicting evidence on the record. 28 C.F.R. § 541.17(f). By either standard, the evidence before the DHO was adequate to support the determination that Petitioner committed the offense and was not actually innocent of the charge.

## Conclusion

The Petition for Writ of Habeas Corpus (Doc. 1) is DENIED with prejudice. The Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** at Tampa, Florida, on November 13, 2019.

*s/William F. Jung*
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

Copies to: Pro Se Petitioner